BREWER, J.,
concurring.
I agree with the majority’s conclusion that the physical fruits of the invited search in this case are not suppressible as a result of the admitted violation of defendant’s rights under Article I, section 12, of the Oregon Constitution. However, I distance myself from two aspects of the majority’s discussion of the principles governing the suppression of evidence for violations of Article I, section 12.
First, I agree with the majority that there is no persuasive support for the proposition that something more is required to attenuate the taint of a Miranda violation than a violation of Article I, section 9. 357 Or at 382. However, I do not believe that less is required to attenuate a Miranda violation than is required to attenuate an unconstitutional search or seizure. Although this court has held that the two attenuation analyses are not identical, they are animated by similar concerns, and, in my view, the attenuation frameworks for violations of rights under Article I, section 12, and Article I, section 9, are structured — and ought to be applied — in comparable terms.
To protect a person’s right against compelled self-incrimination under Article I, section 12, this court has held that, before questioning, law enforcement must give Miranda warnings to a person who is in “full custody” or *387 in circumstances that “create a setting which judges would and officers should recognize to be ‘compelling.’” State v. Jarnagin, 351 Or 703, 713, 277 P3d 535 (2012) (quoting State v. Smith, 310 Or 1, 7, 791 P2d 836 (1990)). When an officer fails to give the requisite warnings, a court must suppress not only the statements that a suspect makes in direct response to unwarned questioning but also evidence that derives from that constitutional violation. State v. Vondehn, 348 Or 462, 476, 236 P3d 691 (2010).[1]
In Jarnagin, this court applied a totality of the circumstances test in determining whether physical or testimonial evidence derived from an earlier Miranda violation must be suppressed. Jarnagin, 351 Or at 716. In doing that, the court relied on Vondehn, 348 Or at 482, where it had directed courts to consider “all relevant circumstances” in deciding whether belated Miranda warnings were effective in ensuring a knowing and voluntary waiver of rights. Among other factors, this court in Jarnagin stated that “the nature of the violation, the amount of time between the violation and any subsequent statements, whether the suspect remained in custody before making any later statements, subsequent events that may have dissipated the taint of the earlier violation, and the use that the state has made of the unwarned statements” were proper considerations in a “fact-intensive” inquiry. Jarnagin, 351 Or at 716-17.
The court in Jarnagin distinguished the attenuation inquiry under Article I, section 12, from the attenuation analysis under Article I, section 9:
*388 “Defendant argues that we should apply the particular methodology set out in State v. Hall, 339 Or 7, 24-25, 115 P3d 908 (2005), to determine whether evidence is the product of a Miranda violation. The Hall methodology applies to violations of Article I, section 9. It does not apply to violations of Article I, section 12. Cf. Brown v. Illinois, 422 US 590, 602-03, 95 S Ct 2254, 45 L Ed 2d 416 (1975) (explaining that the question whether a statement is the product of a Fifth Amendment violation differs from the question whether it is a product of a Fourth Amendment violation). In Vondehn, we cited Hall once in describing the Court of Appeals’ reasoning, see 348 Or at 465, but we did not cite Hall afterwards or apply its methodology in determining whether the physical evidence in that case derived from the Miranda violation, see id. at 476. Similarly, we do not apply Hall’s methodology here.”
Jarnagin, 351 Or at 717 n 9.
Despite what the court said in Jarnagin, in reaching its decision in this case, the majority has borrowed liberally from the attenuation analyses of consent search cases under Article I, section 9. That, I submit, is because the analy-ses for both types of constitutional violations are aimed at similar concerns. Whenever the state has obtained evidence following the violation of a defendant’s Article I, section 9, rights, it is presumed that the evidence was tainted by the violation and must be suppressed. State v. Unger, 356 Or 59, 84, 333 P3d 1009 (2014). The state may rebut that presumption by establishing that the disputed evidence “did not derive from the preceding illegality.” Hall, 339 Or at 25. When determining whether a defendant’s consent to search derived from police misconduct, courts are to consider the totality of the circumstances, including the temporal proximity between the misconduct and the consent; the existence of any intervening or mitigating circumstances; the nature of the misconduct, including its purpose and flagrancy and whether the police took advantage of it; and the volun-tariness of the consent. Unger, 356 Or at 89-93. Although expressed in different words, those factors closely track the factors that the court in Jarnagin indicated are pertinent in an Article I, section 12, attenuation analysis. In short, I do not perceive that the bar is set higher or lower for a violation of either provision.
*389 Second, I agree with the majority that a knowing waiver of Miranda rights is not required for a court to conclude that an ensuing consent or invitation to search is entitled to weight in the attenuation analysis. 357 Or at 381-82. However, I would place more explicit emphasis on the absence of a knowing waiver as an aspect of the totality of circumstances. The reason is simple: a person’s lack of knowledge that he or she has a right not to self-incriminate should raise the same rebuttable presumption that evidence obtained in a consent search was tainted by the preceding illegality that arises in an Article I, section 9, attenuation analysis. In other words, a causal connection between a Miranda violation and the discovery of challenged evidence requires the state to establish the existence of circumstances that either legally or factually break that connection. See Vondehn, 348 Or at 476; see also id. at 490 (Linder, J., concurring). To be sure, the violation casts a meaningful shadow in the attenuation analysis even though it is not, by itself, dispositive.
Despite my differences with the majority’s analysis, I agree with the outcome that it reaches. This is a close case. Weighing in favor of suppression are the presumption of taint arising from the absence of warnings, the close temporal proximity between the violation and the invitation to search, the fact that defendant was handcuffed and in custody when he invited the deputy to search, and the absence of any indication that the violation was inadvertent. For various reasons, people in custody sometimes invite law enforcement officers to search their persons or belongings, even when they know that contraband is likely to be found. We would be naive to assume that experienced law enforcement officers do not understand that.
However, Article I, section 12, does not set an insurmountable bar to a custodial invitation to search, even when the invitation would not have been made in the absence of a constitutional violation. I agree with the majority that the physical fruits of the search in this case did not derive from the Miranda violation. The detention here was brief; only one impermissible question was asked; that question was not asked coercively; and, in asking the impermissible question, *390 the deputy did not seek consent to search. Although there is no evidence that defendant knew that he had the right to remain silent, nothing prevented him — apart from his self-accountable volition — from simply answering the deputy’s question and leaving it at that. He did not need to invite the deputy to search his vehicle. In the end, that factor tips the scales for me.
For the foregoing reasons, I concur.

 In Vondehn, this court examined the basis for the requirement that law enforcement inform people in custody of their right against self-incrimination under Article I, section 12. The court explained that,
“[b]ecause a custodial interrogation is inherently compelling, and to ensure the validity of a waiver of the right against self-incrimination, Article I, section 12, requires that the police inform a person subjected to custodial interrogation that he or she has a right to remain silent and to consult with counsel and that any statements that the person makes may be used against the person in a criminal prosecution. Article I, section 12, requires those Miranda warnings to ensure that a person’s waiver is knowing as well as voluntary. If the police conduct a custodial interrogation without first obtaining a knowing and voluntary waiver of the suspect’s rights, then they violate the suspect’s Article I, section 12, rights.”
348 Or at 474.